IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT ARKANSAS
HOT SPRINGS DIVISION

HEATHER JOBE                                                    PLAINTIFF

VS.                            NO. _____

INTEGRITY MARKETING GROUP, LLC
ELDERCARE INSURANCE SERVICES, INC.
JOHN DOE CORPORATE ENTITY                       DEFENDANTS

## COMPLAINT

Plaintiff Heather Jobe, by and through her attorney, Scott Richardson, McDaniel, Wolff, & Benca PLLC, states for her Complaint against Defendant:

## I. RESIDENCY & PARTIES

1.     At the time of the events material to this Complaint, Plaintiff Heather Jobe was a citizen and resident of Garland County, Arkansas.

2.     Plaintiff's daughter Z.J. is a person with a disability, namely, Idiopathic Generalized Epilepsy.

3.     At all times relevant to this Complaint, Defendant Integrity Marketing Group, LLC's ("IMG") principal place of business was located at 9111 Cypress Waters Blvd., Suite 450, Dallas, Texas 75019. IMG maintained an office at 835 Central Ave., Ste 401, Hot Springs, Arkansas 71901.

4.     Defendant Eldercare Insurance Services, Inc. ("EIS") was a company affiliated with, owned by, and an agent of IMG. EIS's principal place of business at 115 Sawtooth Oak St., Hot Springs, Arkansas, 71901. EIS may be served with process through its registered agent Jerry Shelton, 321 Section Line Rd., Suite L, Hot

1

Springs, AR 71913.

5.      At all times relevant to this Complaint, Defendants IMG and/or EIS were employers of Heather Jobe within the meaning of the Americans with Disabilities Act. 42 U.S.C. § 12111(5).

6.      Defendant John Doe Corporate Entity is an entity affiliated, owned by, or otherwise an agent of IMG that served as the entity through with IMG employed Plaintiff Heather Jobe.

7.      Defendants will be collectively referred to herein as "IMG."

8.      IMG is the nation's largest independent distributor of life and health insurance products.

## II. JURISDICTION & VENUE

9.      This is an action for declaratory relief, injunctive relief, and damages to redress deprivation of rights secured to the Plaintiffs. The Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 12101 *et seq.* as amended and the Americans with Disabilities Act of 1990. The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

10.     Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to this claim occurred in the Western District of Arkansas.

## III. BASIC PREMISE

11.     This is a disability discrimination case arising from Plaintiffs' employment with IMG in Hot Springs, Arkansas.

### IV.  FACTS

12.     On or about October 18, 2019, Plaintiff Jobe was hired as a direct sales transfer agent by IMG at Hot Springs, Arkansas.

13.     Plaintiff's daughter has Idiopathic Generalized Epilepsy which qualifies as a disability under the ADA.

14.     At the time of her hire, Ms. Jobe notified IMG of her daughter's disabling condition and informed her superiors that she would need some flexibility in her schedule because of her daughter's disability.

15.     Ms. Jobe further informed her supervisors that her daughter would have episodes including Grand Mal seizures that would require Ms. Jobe to stay with Z.J. due to the severity of the episodes and the danger they placed her life in, including, from Sudden Unexpected Death in Epilepsy or SUDEP.

16.     The ADA prevents an employer from "discriminat[ing] against a qualified individual on the basis of disability" including by "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4) *see also* 29 C.F.R. § 1630.8.

17.     At all times relevant to this Complaint, Ms. Jobe performed her duties properly and met the expectations and requirements of her employer and supervisors.

18.     Among other things, IMG brokers supplemental insurance for people who qualify for Medicare.

19.     IMG employed Ms. Jobe as a transfer agent. As a transfer agent, Ms.

Jobe's job was to speak over the telephone with potential customers of IMG over the phone about supplemental Medicare products that IMG offered. If the potential customers expressed interest, Ms. Jobe would transfer the telephone call to an insurance agent who would attempt to sell the potential customer supplemental insurance services.

20.   On Saturday, November 16, 2019, Z.J. had a life-threatening seizure that required four days of hospitalization at Arkansas Children's Hospital. Ms. Jobe stayed with Z.J. during this time period.

21.   Concerned about being required to be away from work to care for her daughter, Ms. Jobe contacted her manager, Robert Sterling, and informed him that she would need to be absent to care for her daughter.

22.   Sterling informed her that she would not be fired for caring for her daughter.

23.   IMG allows flexibility to employees who need to be absent for illness or other personal reasons.

24.   Ms. Jobe also emailed Heather Underwood, who worked for IMG in human resources. She sent Ms. Underwood an email entitled "absences due to her daughter's disability."

25.   Ms. Jobe worked for IMG at its offices from her hire until March of 2020, when the coronavirus pandemic hit.

26.   At that time, all IMG employees (including Ms. Jobe) in the Hot Springs office were sent home.

4

27.     IMG employees were allowed to work remotely if they owned or purchased internet service at home.

28.     Ms. Jobe purchased internet service so that she could work from home for IMG during the pandemic.

29.     In June 2020, Ms. Jobe's prior manager Robert Sterling left the office and was replaced by Mitch Herman.

30.     On or about June 7, 2020, IMG re-opened its offices and brought employees back to work in-house.

31.     During the summer of 2020, Z.J.'s epilepsy was requiring additional care and monitoring.

32.     Ms. Jobe informed her supervisors and the IMG human resources office that Z.J.'s disability was causing her problems with arriving to work on time. She needed some flexibility to accommodate Z.J.'s disability.

33.     Despite this, Ms. Jobe continued to work in person at IMG's offices.

34.     Ms. Jobe asked IMG if she could work from home in part so she could better care for her daughter's disability.

35.     Bethanie Norman told Ms. Jobe that she thought this could be approved.

36.     Mitch Herman, Ms. Jobe's new manager, denied the request to work from home.

37.     At no time did IMG or its supervisors engage in an interactive process to determine how IMG could accommodate the work pressures caused by Z.J.'s disability.

38.    Ms. Jobe was treated differently from similarly situated employees because of her daughter's disability.

39.    Other employees were allowed to work from home including other direct sales transfer agents.

40.    Other employees were allowed flexible schedules or were not disciplined because of tardiness issues.

41.    In particular, another transfer agent, Shannon McCoy, was allowed to work from home to care for her grandchild.

42.    Shannon McCoy was similarly situated to Ms. Jobe in all relevant respects, but Ms. Jobe was not granted the same work conditions as Ms. McCoy.

43.    On July 8, 2020, Ms. Jobe was placed on "Performance Review Probation" because of attendance issues primarily related to her daughter's disability.

44.    On Thursday, July 16, 2020, Ms. Norman informed Ms. Jobe that she had met her probation goals and that "something good came out of some bad."

45.    On Friday, July 17, 2020, Z.J. had a five grand mal epileptic seizures. She went into status ellipticus, a long-term seizure. As a result she had to be intubated and airlifted to Arkansas Children's Hospital in Little Rock by helicopter because of the severity of the seizure episode. While there she stayed in the pediatric intensive care unit.

46.    Z.J. stayed at Children's Hospital until Monday, July 20, 2020.

47.    This seizure has been one of Z.J.'s most serious and dangerous.

Following this seizure, she has required increased medical care including from treatment teams in Memphis, Tennessee.

48.     Despite this, Ms. Jobe was ready, willing, and able to continue performing her work for IMG.

49.     During her absence she informed her supervisors, Ms. Norman and Mr. Herman, of her daughter's seizures and hospitalization. Ms. Norman responded, "That'll work."

50.     A day after Ms. Jobe returned to work on July 22, 2020, however, she was terminated.

51.     Ms. Jobe returned to work on or about July 21, 2020. While she was noting her seventh transfer, Mr. Herman yelled at her and took her out of the office.

52.     Ms. Norman joined them.

53.     Mr. Herman told Ms. Jobe that he understood her daughter's condition but that he believe she was going to require time off in the future because of her daughter's disability. Mr. Herman said he needed to cut ties with Ms. Jobe and fill her seat with someone who would not be distracted from work because of a relative's disability. Mr. Herman terminated her employment and sent Ms. Jobe home.

## V.  CAUSE OF ACTION – ADA DISABILTY DISCRIMINATION

54.     The ADA prohibits employers from discriminating against employees based on disability including because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4).

55.     A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

56.     Plaintiff Heather Jobe was a qualified individual because she was able to perform the essential functions of her job.

57.     Ms. Jobe was discriminated against because of the known disability of her daughter.

58.     IMG refused to afford her the same working conditions as it did to persons who were not associated with a disabled person.

59.     Instead, it refused to allow her to use accrued sick leave time, schedule flexibility, work from home, and other conditions it allowed for other employees and, instead, terminated her employment because of her daughter's disability.

60.     Defendants failed to train Plaintiff in her rights and how to register complaints of disability discrimination in their workplace.

61.     Thus, Defendants failed to exercise reasonable care to prevent disability discrimination in the workplace.

62.     When Plaintiff complained about the disability discrimination to her supervisors, Defendants failed to promptly correct the discrimination.

63.     Accordingly, Defendants violated the ADA.

64.     Plaintiff filed a timely charge of discrimination with the EEOC based upon ADA disability discrimination.

65.     EEOC issued "Right to Sue" letter on January 28, 2015.

## VI.  CAUSE OF ACTION – ARKANSAS CIVIL RIGHTS ACT

66.    Defendant's actions and omissions outlined above constitute disability discrimination prohibited by the Arkansas Civil Rights Act (ACRA).  Ark. Code Ann. § 16-123-101, et seq.

67.    Defendant's actions and omissions outlined above constitute disability discrimination in violation of the ACRA.

## VII.  INJURIES AND COMPENSATORY DAMAGES

68.    Plaintiff sustained injuries as a result of the Defendants' violation of her rights under the ADA and the ACRA.

69.    Plaintiff's injuries include both economic and emotional damages in that Plaintiff lost pay, suffered discrimination, and was forced to endure the stress of the loss of her job when she had done nothing wrong.

70.    Plaintiff is entitled to the following damages:

a. Back pay, front pay, lost benefits, and interest from loss of her employment due to Defendants' violation of Plaintiff's civil rights;

b. Any and all compensatory damages as provided by law;

c. Any and all punitive damages as provided by law;

d. All costs and attorneys' fees associated with this action;

e. The value of any earnings, profits, or salary lost in the past and that are reasonably certain to be lost in the future.

f. Plaintiff is entitled to declaratory and injunctive relief as follows: a finding that the Defendants' conduct was in violation of the ADA and

the Arkansas Civil Rights Act;

71.    Plaintiff requests an award of all other relief to which she may be entitled, including but not limited to the costs of this action, expenses, attorney's fees, pre-judgment and post-judgment interest at the maximum rate allowed by law, and all other damages and relief to which Plaintiff is entitled to under the law.

## VIII.  JURY TRIAL DEMAND

72.    Plaintiff hereby demands a trial by jury.

Respectfully submitted,

By: _____

Scott P. Richardson #2001208
**McDaniel, Wolff, & Benca PLLC**
1307 West 4th St.
Little Rock, AR 72201
o 501-954-8000
fax 866-419-1601
scott@mwbfirm.com

Attorney for Plaintiff